NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J.H. REID GENERAL CONTRACTOR, | : | |
| Plaintiff, | : | |
| v. | : | |
| CONMACO/RECTOR, L.P., SHINSEGAE POWERQUIP INDUSTRIAL CO., LTD., d/b/a BRUCE, | : | **OPINION** |
| | : | Civ. No. 08-6034 |
| Defendants. | : | (WHW)(CCC) |
| CONMACO/RECTOR, L.P., | : | |
| Crossclaim Plaintiff, | : | |
| v. | : | |
| SHINSEGAE POWERQUIP INDUSTRIAL CO., LTD., d/b/a BRUCE, | : | |
| Crossclaim Defendant. | : | |
| SHINSEGAE POWERQUIP INDUSTRIAL CO., LTD., d/b/a BRUCE, | : | |
| Second Crossclaim Plaintiff | : | |
| v. | : | |
| CONMACO/RECTOR, L.P., | : | |
| Second Crossclaim Defendant. | : | |

**Walls, Senior District Judge**

Defendant, Conmaco/Rector, LP ("Conmaco"), moves to dismiss the crossclaims of co-defendant, Shinsegae Powerquip Industrial ("SPI"), for failure to state a claim upon which relief can be granted. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides

1

the motion without oral argument. Conmaco's motion to dismiss SPI's crossclaims is granted in part and denied in part: SPI's claims for breach of contract and fraudulent inducement are dismissed without prejudice. SPI's claim for breach of the implied warranty of fitness for a particular purpose and its claim for negligence are dismissed with prejudice. Conmaco's motion to dismiss SPI's claims for contribution and indemnification is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

SPI is the manufacturer of the pile hammer. Conmaco is SPI's distributor. Reid is the purchaser of the pile hammer. On December 9, 2008, Plaintiff, J.H. Reid General Contractor ("Reid"), filed a complaint against Defendants Conmaco and SPI for breach of express and implied warranties and violation of the laws of the State of New Jersey.

Reid alleges the following: "Upon being awarded the contract for the Route 36 Bridge Replacement ("the Project") by the State of New Jersey," Conmaco approached Reid to sell it a pile hammer that was manufactured by SPI. (Compl. ¶ 9.) "Conmaco was aware from the bid specifications for the Project that in excess of one hundred 54-inch concrete piles would need to be driven to build the bridge and that Reid would need to purchase a pile hammer that was fit for this purpose." (Id. ¶ 10.) SPI was also aware that Reid intended to use the pile hammer for the Project. (Id. ¶ 15.) On January 8, 2008, Reid executed an "Order Confirmation" with Conmaco for the delivery of a "Hydraulic Hammer Assembly BRUCE Model SGH-3015" and its component parts (collectively the "pile hammer") at a cost of $885,000.00. (Id. ¶ 12.) SPI delivered an operations manual to Reid that "warranted that the [p]ile [h]ammer would be free of defective workmanship." (Id. ¶ 16.) Reid used the pile hammer in its work on the Project but the pile hammer malfunctioned and broke some of the piles. (Id. ¶ 18-21.) "Conmaco representatives, who had been on site for the driving of the first, third, and fourth piles, agreed

that the pile hammer should be examined." (Id. ¶ 22.) "SPI representatives took the [p]ile [h]ammer apart on the job site and one of the purportedly solid steel segments of the [p]ile [h]ammer used to drive the piles into the ground was broken into three pieces." (Id. ¶ 23.) "An examination of the segment confirmed that the segment had not been properly cast by SPI and that the miscasting resulted in structural weaknesses throughout the segment." (Id. ¶ 24.) Reid lost significant time because of the delays caused by the failure of the pile hammer and was forced to purchase a replacement pile hammer because SPI's pile hammer was inoperable for a prolonged period of time. (Id. ¶ 29-30.)

On September 4, 2009, Conmaco filed its amended answer to Reid's Complaint. Conmaco claims that it is not liable to Reid for any damages for a number of reasons not relevant to this motion. In addition, Conmaco filed a number of crossclaims against SPI, claiming that, even if the pile hammer were found to be defective, SPI should be liable because it failed to deliver the pile hammer to specification and free from defect. (Conmaco/Rector, L.P. Amended Answer, Affirmative Defenses, Counterclaims, Crossclaims and Jury Demand, ("Conmaco Ans.") at ¶ 68.)

On October 9, 2009, SPI filed its answer to Conmaco's crossclaims and in turn asserted six crossclaims against Conmaco. SPI claimed that: (1) Conmaco breached the Exclusive Distributorship Agreement ("Distributorship Agreement") by failing to adequately inspect the pile hammer after receiving it (SPI Compl. ¶ 13); (2) Conmaco breached an implied warranty of fitness for particular purpose by failing to advise SPI of any particular purpose for which the pile hammer was being bought (Id. ¶ 16); (3) Conmaco fraudulently induced SPI to sell the pile hammer to Conmaco for use by Reid (Id. ¶ 23); (4) "Conmaco failed to exercise due care in its identification and repair of alleged problems with the [p]ile [h]ammer" (Id. ¶ 27); (5) Conmaco

3

should be liable for contribution to SPI if SPI is found liable; and (6) SPI is entitled to indemnification from Conmaco "as any damages imposed on it in this action to respond to Reid are necessarily due to the active fault and negligence of Conmaco." (Id. ¶ 32.)

On November 13, 2009, Conmaco moved to dismiss SPI's crossclaims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). While "[t]he pleading standard Rule 8 announces does not require detailed factual allegations, [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (internal citations omitted). A "complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" (Serrano v. Sec. Nat'l Mort. Col., 2009 U.S. Dist. LEXIS 71725, *4 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007)), and "the court need not consider Plaintiff's bald assertions or legal conclusions." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly at 546. Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims.'" Twombly 127 S. Ct. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

To decide a motion to dismiss, courts generally consider only the allegations in the complaint, as well as documents attached to or specifically referenced in the complaint. See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

If a complaint fails to state a claim upon which relief can be granted, a party may amend its pleading by leave of the court and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a), 15(a)(2). Zen Invs., LLC v. Unbreakable Lock Co., 2008 U.S. App. LEXIS 8898, 202 (3d Cir. 2008). The Supreme Court has instructed that:

> The grant or denial of an opportunity to amend is within the discretion of the District court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc., 482 F.3d 247, 252 (2007). "[T]o request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." Id. ("a failure to submit a draft amended complaint is fatal to a request for leave to amend.")

5

## DISCUSSION

### I. SPI's First Claim (Breach of Contract)

To state a claim for breach of contract, a plaintiff must allege: "(1) a contract between the parties; (2) breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 204 (3d Cir. 2007).

SPI alleges that (1) the Distributorship Agreement was a valid and binding contract between the parties; (2) the Distributorship Agreement provides that "[p]romptly after the receipt of the products, 'representative' [Conmaco] shall inspect or cause its qualified agent to insure that quality standards, as agreed to by the parties in writing, have been met;" (3) if "it is determined that the [p]ile [h]ammer did not meet the agreed upon quality standards, Conmaco breached the Distribution Agreement by its failure to adequately inspect the [p]ile [h]ammer;" and (4) "[a]s a direct and proximate cause of Conmaco's breach of contract [SPI] has suffered damages." (SPI Compl. ¶¶ 11-14.)

Conmaco argues that SPI's breach of contract claim should be dismissed for two reasons. First, Conmaco alleges that SPI "has brought forth no facts disputing Reid's contentions that Conmaco's representatives—and even [SPI's] own representatives—did, indeed, inspect the pile hammer as soon as practicable upon receipt at Reid's Project premises." (Conmaco Br. at 7.) Conmaco avers that "[b]ased on the undisputed facts of the aforementioned pleadings, then, it is clear that Conmaco did not breach Section 7(1) of the Distributorship Agreement." Id. at 7 (citing Compl. ¶¶ 22-23; see also Conmaco Ans. ¶¶ 24-36)). Second, Conmaco argues that, "[b]ecause [SPI] itself breached the Distributorship Agreement, it is prohibited from bringing this breach of contract claim against Conmaco under New Jersey law. See Frederico v. Home

Depot, 507 F.3d at 204 (3d Cir. 2007) (dismissing plaintiff's breach of contract claim because the plaintiff failed to allege the essential elements of a breach, including that the party performed its own contractual obligations); see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 561 (D.N.J. 2002). Conmaco contends that SPI has failed to state a claim and that its complaint should be dismissed pursuant to Rule 12(b)(6).

SPI counters that it "denies that the pile hammer was rendered inoperable as a result of manufacturing defects," "that it promised to provide Conmaco with a working pile hammer consistent with the specifications provided," and "that Conmaco timely and fully performed all of its obligations under the Distribution Agreement." (SPI Br. at 6.) SPI argues that "[t]o accept Conmaco's assertion that SPI has breached the Distributorship Agreement by delivering an allegedly defective product is unfounded in light of Conmaco's agreement to a contractual remedy which provides SPI with a right to cure such defect if it indeed occurred." Id. at 7.[1] SPI asks that, if the Court dismisses SPI's claim for breach of contract because of SPI's failure to allege its own performance under the Distributorship Agreement, the Court grant it leave to amend this claim. Id. at 7 (citing Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed, such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.")).

---

[1] Section 7 of the Distributorship Agreement states:
 INSPECTION AND WARRANTY
  1) Promptly after the receipt of the products, [Conmaco] shall inspect or shall cause its qualified agent to insure that quality standards . . . have been met. If any of the products or any part of a product [] is found not to be in compliance with [these] quality standards, [SPI] shall supply [Conmaco] free of charge for the products or part of a product [] not meeting the quality standards.
(Distributorship Agreement at ¶ 7.) It is unnecessary to address the substantive merit of SPI's claim because as the Court discussed, SPI's pleadings sufficiently state a breach of contract claim against Conmaco.

The Court finds that SPI fails to state a claim for breach of contract because SPI does not allege its own compliance with the Distribution Agreement in its pleadings. For purposes of a motion to dismiss, the Court looks only to the pleadings and does not consider additional factual allegations in SPI's brief. Interfaith, 263 F. Supp. 2d at 871. The Court dismisses SPI's breach of contract claim without prejudice, granting it leave to amend its complaint. Zen Invs, 2008 U.S. App. LEXIS at 202.

**II. SPI's Second Claim (Breach of Implied Warranty of Fitness for Particular Purpose)**

The Uniform Commercial Code ("UCC"), codified at N.J.S.A. § 12A:2-315, describes the implied warranty of fitness for a particular purpose:

> Where a seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Uniform Commercial Code § 2-315. "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Valansi v. Ashcroft, 278 F.3d 203, 209 (3d Cir. 2002) (quoting Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001)). "If the statutory meaning is clear, our inquiry is at the end." Singh v. Ashcroft, 383 F.3d 144, 150 (3d Cir. 2004).

SPI, the manufacturer of the pile hammer, is suing Conmaco, the distributor, for breach of the implied warranty of fitness for a particular purpose. SPI alleges that (1) "Conmaco failed to advise [SPI] of any particular purpose for which the [p]ile [h]ammer was being bought;" (2) "[a]s a consequence, [SPI] was unaware that the [p]ile [h]ammer was to be used for any purpose other than its intended use," (3) "[t]o the extent that it is determined that the [p]ile [h]ammer is unsuitable for Reid's particular purpose, it was Conmaco, not [SPI] that made any assertions of

suitability to Reid;" and (4) "[a]s a direct and proximate result of Conmaco's breach of warranty of fitness for particular purpose, [SPI] has suffered damages." (SPI Crossclaim ¶¶ 15-19.)

Conmaco argues that SPI's claim for breach of warranty of fitness for particular purpose should be dismissed under Rule 12(b)(6) because SPI lacks standing, as it is not the "ultimate user" of the allegedly deficient good. (Conmaco Br. at 9.) Conmaco claims that, under New Jersey law, "damages for breach of warranty are recoverable by the ultimate user who has sustained property damage and economic loss." Fashion Novelty Corp. of N.J. v. Cocker Mach. & Foundry Co., 331 F. Supp. 960, 965 (D.N.J. 1971). SPI counters that the court in Fashion Novelty was not limiting the range of parties that can bring warranty claims under the UCC, but was extending it. (SPI's Br. at 8.)

The Court finds Fashion Novelty to be irrelevant to this case. The Fashion Novelty court was concerned about whether the ultimate user of a product who had sustained property damage and economic loss, and who had come into possession of the defective goods by means other than by sale and purchase, could recover for breach of the implied warranty of fitness for a particular purpose. Fashion Novelty, 331 F. Supp. at 965. Here, SPI is the manufacturer, not the ultimate user of the pile hammer. The Court has not found any case where a manufacturer sues the distributor for breach of the implied warranty of fitness for a particular purpose and the parties have not cited to any case. Instead, the Court looks to the language of the UCC, which clearly resolves this issue. Uniform Commercial Code § 2-315; see also, Singh v. Ashcroft, 383 F.3d at 150 ("If the statutory meaning is clear, our inquiry is at the end.") The UCC gives the buyer the right to sue the seller for breach of the implied warranty of fitness for a particular purpose. Because SPI is not the buyer, it cannot sue for breach of the implied warranty of fitness for particular purpose. Uniform Commercial Code § 2-315. The Court dismisses SPI's claim for

9

breach of the implied warranty of fitness for particular purpose and does not grant SPI leave to amend this claim because to do so would be futile.  See Fletcher, 482 F.3d at 252.

### III. SPI's Third Claim (Fraudulent Inducement)

To sustain a claim of fraudulent inducement, a plaintiff must demonstrate "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F. 2d 786, 791 (3d Cir. 1984) (The purpose of the rule is to "place the defendants on notice of the precise misconduct with which [i]t is charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.")  "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico, 507 F.3d at 200.  "Further, the plaintiff must allege who made the purported misrepresentations and what specific misrepresentations were made."  Id.

SPI alleges that (1) it "provided the [p]ile [h]ammer based on the knowing and false representations of Conmaco that it would be used for its ordinary purposes or would be suitable

10

for Reid's particular purposes;" (2) "[h]ad [SPI] been aware of a particular purpose, if any, for which the [p]ile [h]ammer was not suitable, it would not have entered into a contract for the sale of the [p]ile [h]ammer;" (3) "[SPI] relied on the fraudulent misrepresentations of Conmaco to induce it to sell the [p]ile [h]ammer to Conmaco for use by Reid;" and (4) "[a]s a direct and proximate result of Conmaco's fraudulent inducement, SPI has suffered damages." (SPI Crossclaim ¶¶ 21-24.)

Conmaco argues that SPI fails to satisfy the heightened pleadings requirements of Rule 9(b) because it "relies on conclusory allegations of fraud without providing any supporting facts whatsoever." (Conmaco Br. at 10.)

SPI argues that its pleadings on this count "inject precision or some measure of substantiation into SPI's allegation of fraud against Conmaco" "because they place Conmaco on notice of the precise misconduct charged: 'the knowing and false representations [to SPI] that the [pile hammer] would be used for its ordinary purposes or would be suitable for Reid's particular purposes,' '[h]ad [SPI] been aware for a particular purpose, if any, for which the pile hammer was not suitable, it would not have entered into a contract for the sale of the pile hammer.'; and that [SPI] relied on the fraudulent misrepresentation of Conmaco to induce it to sell the pile hammer to Conmaco for use by Reid.' (SPI Br. at 10 (internal citations omitted.).) In the event that the Court finds that SPI's pleadings do not satisfy the heightened pleading standard of rule 9(b), SPI requests that the Court grant it leave to amend this claim. (SPI Br. at 11 (citing Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).)).

The Court finds that SPI fails to inject precision or any measure of substantiation into its fraud claim to satisfy the heightened standard of Rule 9(b). Frederico, 507 F.3d at 200. The language used by SPI in its pleading is broad and vague. SPI does not specify who made the

alleged misrepresentation or the exact nature of the misrepresentation; rather, it says that the misrepresentation was either that the pile hammer would be used for its ordinary purpose or for Reid's particular purpose. (SPI Crossclaim ¶ 21.) SPI's statement that, had it been aware of "a particular purpose, **if any**, for which the pile hammer was not suitable," is too vague and qualified to satisfy the heightened particularity standard of a fraudulent inducement claim. (SPI Crossclaim ¶ 22 (emphasis added.)) The Court grants Conmaco's motion to dismiss SPI's claim for fraudulent inducement because the Court finds that SPI's conclusory allegations against Conmaco fail to provide Conmaco with sufficient notice as required by Rule 9(b). Fed. R. Civ. P. 9(b). In its discretion, the Court grants SPI leave to amend its complaint to seek to satisfy the heightened particularity requirement of Rule 9(b). Foman, 371 U.S. at 182.

### IV. SPI's Fourth Claim (Negligence)

To make a prima facie case of negligence, a plaintiff must show "(1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages." Weinberg v. Dinger, 106 N.J. 469, 484 (1987 (internal citation omitted.)).

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law . . . ." Saltiel, 170 N.J. at 300. Although "[t]he boundary line between tort and contract actions is not capable of clear demarcation," New Mea Construction Corp. v. Harper, 203 N.J. Super. 486 at 486 (App. Div. 1985), "[t]he determination of whether a duty exists is generally considered a matter of law to be decided by the court." Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572 (N.J. Sup. Ct. 1996.); S.P. v. Collier High School, 319 N.J. Super. 452, 467 (App. Div. 1999). "The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care." Id. "Once foreseeability of an injured party is established, considerations of

fairness and policy then govern whether the imposition of a duty is warranted." Carvalho, 143 N.J. at 573. Finally, the "assessment of fairness and policy 'involves identifying, weighing, and balancing several factors, including relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and public interest in the proposed solution." Id.; see also, New Mea, 203 N.J. Super. at 493 (citing Prosser & Keeton, Law of Torts § 92 at 656-58 (5th ed. 1984) (noting that three factors used by courts in evaluating the appropriateness of brining a tort claim as opposed to a contract claim are: (1) the nature of the defendant's activity, (2) the relationship between the parties, and (3) the type of injury or harm threatened.)).

     SPI alleges that (1) "[b]y the terms of the Distributorship Agreement, Conmaco had the duty to attempt to correct any problems with the pile hammer according to [SPI] instructions;" (2) "Conmaco failed to exercise due care in its identification and repair of alleged problems with the pile hammer;" and (3) "[a]s a direct and proximate result of Conmaco's negligence, [SPI] has suffered damages." (SPI Crossclaim ¶ 25-28.)

     SPI argues that its tort claim against Conmaco should not be dismissed because the "three factors articulated by Prosser and Keeton for deciding the appropriateness of bringing a tort action favors them. (SPI Br. at 12 (citing Prosser & Keeton, Law of Torts § 92 at 656-58).) With respect to the first factor—the nature of the defendant's activity—SPI contends that "Conmaco undertook, based on a general contractual duty to SPI, to perform entirely at its own discretion the correction of alleged problems with the pile hammer" but was negligent in its repair. (SPI Br. at 12.) As to the second factor—the relationship between the parties—SPI maintains that it "was owed an independent duty of care as it falls within the range of harm, and SPI, therefore, is in the 'considerable class of people' who falls within the range of harm." Id. SPI also argues that the third factor—the type of injury or harm threatened—favors bringing a

13

tort claim because "the Distributorship Agreement does not specify the means (nor the remedies for breach) by which Conmaco should undertake any 'attempt to correct any problems with the [p]ile [h]ammer.'" Id.

Conmaco counters that SPI's negligence claim should be dismissed because "[a]s a matter of law, SPI cannot bring a negligence tort action against Conmaco where its potential claims actually arise in contract." (Conmaco Br. at 11 (citing Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 309 (N.J. Sup. Ct. 2002) ("[n]otwithstanding the language of the [plaintiff's] complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract." (quoting Wasserstein v. Kovatch, 261 N.J. Super. 277, 286 (App. Div. 1993)).)

The Court finds that SPI's claim for negligence is weakened by an analysis of the three factors that courts utilize in deciding on whether an action in tort is appropriate. First, assuming the truth of SPI's pleadings, as the Court must on a motion to dismiss, the nature of Conmaco's activities was contractual. Conmaco's duty arose from the terms of the Distributorship Agreement whereby Conmaco "had the duty to attempt to correct any problems with the [p]ile [h]ammer according to [SPI] instructions" and Conmaco failed to exercise due care in its identification and repair of alleged problems with the pile hammer. (SPI Crossclaim ¶ 26-27.) Second, the relationship between SPI and Conmaco was contractual: SPI was the manufacturer and Conmaco was the distributor. Finally, the type of injury or harm threatened by Conmaco's alleged breach of the Distribution Agreement is the harm that was directly foreseeable from a breach of the contract. It follows that Conmaco's motion to dismiss SPI's tort claim is granted because the complaint essentially arises in contract rather than in tort. See Saltiel, 170 N.J. at

309. The Court does not grant SPI leave to amend this claim because to do so would be futile. See Fletcher, 482 F.3d at 252.

### V. SPI Fifth Claim (Contribution)

"A defendant in a tort action may assert a claim for contribution under the Joint Tortfeasors Contribution Act, N.J.S. A. § 2A:53-A, against his codefendants, or any of them, by inserting in his answer a general demand for contribution from them." Young v. Latta, 123 N.J. 584, 593 (1991). "Contribution . . . is the right of one tortfeasor to recover from another tortfeasor when both are liable to a victim and one has paid more than his or her equitable share of the common liability." In re Cendant Corp. Sec. Litig., 139 F. Supp. 585, 594 (D.N.J. 2001).

SPI claims that it is entitled to contribution from Conmaco in the "event that Reid establishes and receives damages in tort against Conmaco for negligently inspecting, setting up, and repairing the pile hammer, and that SPI is also found liable for those tort damages." (SPI Br. at 13.)

Conmaco moves to dismiss SPI's contribution claim because SPI's "potential liability arises solely in contract," and "[t]here is no viable tort claim against Conmaco." (Conmaco Br. at 12.) Conmaco argues that there is no incongruity in dismissing SPI's contribution claim against Conmaco while maintaining Conmaco's contribution claim against SPI because even assuming that Conmaco did not specify the purpose of the pile hammer, SPI's fault in manufacturing the pile hammer preceded Conmaco's alleged fault. (Conmaco Br. at 12.)

The Court finds that SPI states a valid claim for contribution. Conmaco fails to consider that the right to contribution may arise when two tortfeasors are both liable to a third party and one has paid more than his or her equitable share. See Cendant, 139 F. Supp. at 594. Even though the Court finds that SPI does not have a tort claim against Conmaco, Reid may have a

tort claim against both SPI and Conmaco.  And SPI may still be held liable along with Conmaco as a joint tortfeasor against Reid.  See ids.  Conmaco's motion to dismiss SPI's contribution claim is denied.

### VI.  SPI's Sixth Claim (Indemnity)

In the absence of an express agreement between them, common law indemnity is "an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Pomaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 510 (1989).  The right to common-law indemnity arises "without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." Prosser & Keeton, Law of Torts § 51 at 341 (5th ed. 1984) "One branch of common-law indemnity shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable."  Promaulayko, 116 N.J. at 510 (citing Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960)).  "A corollary to this principle is that one who is primarily at fault may not obtain indemnity from another tortfeasor."  Id. (citing  Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980).

Conmaco claims that SPI's indemnification claim should be dismissed because SPI is defending against claims arising from its own conduct, "as both Reid and Conmaco allege that a miscast part in [SPI's] manufacturing of the pile hammer caused it to be defective. (Conmaco Br. at 13.)

In response, SPI makes two main arguments.  First, SPI insists that Conmaco is making an assumption regarding a disputed fact—namely that the pile hammer was ultimately defective because SPI miscast part of it in the manufacturing process.  (SPI Br. at 14)  Second, SPI maintains that Conmaco's request for dismissal of SPI's indemnity claim is premature at the pleading stage because, under New Jersey law, "[a]llegations in the pleadings may be a starting

16

point to determine whether counsel fees and costs are recoverable . . ., but the actual facts developed during trial should control." (SPI at 14 (citing Central Motor Parts Corp. v. e. I. DuPont deNemours & Co., Inc., 251 N.J. Super. 5, 762 (App. Div. 1990).) SPI argues that, under Central Motors, the Court should not rely on the pleadings to dismiss SPI's claim for indemnification. (SPI Br. at 14.)

The Court finds SPI's second argument to be irrelevant. The issue in Central Motors was whether an indemnitee can recover counsel fees and costs when it defended against its independent fault. This issue is irrelevant now because Conmaco seeks to dismiss SPI's claim for indemnification, not SPI's claim for counsel fees. However, SPI's first argument is correct. Conmaco's conclusion that SPI is only defending against its independent fault is premature. As example, SPI may prove at trial that the pile hammer was not inoperable as delivered, and the jury may find that Reid's damages, if any, were the result of the active fault of Conmaco, not SPI. Moreover, while SPI does not articulate this argument, even if the pile hammer were damaged when delivered, SPI may be only liable under the terms of the Distributorship Agreement[2] to Conmaco for the repair of the damaged part. The Court denies Conmaco's motion to dismiss SPI's indemnification claim.

## CONCLUSION

Conmaco's motion to dismiss SPI's crossclaims is granted in part and denied in part: SPI's claims for breach of contract and fraudulent inducement are dismissed without prejudice.

---

[2] Section 7 of the Distribution Agreement attached as exhibit A in Conmaco's Crossclaim against SPI and relied upon by SPI states:
1) Promptly after the receipt of the products, [Conmaco] shall inspect or shall cause its qualified agent to insure that quality standards . . . have been met. If any of the products or any part of a product [] is found not to be in compliance with [these] quality standards, [SPI] shall supply [Conmaco] free of charge for the products or part of a product [] not meeting the quality standards.

(Distributorship Agreement at ¶ 7).

17

SPI's claim for breach of the implied warranty of fitness for a particular purpose and its claim for negligence are dismissed with prejudice. Conmaco's motion to dismiss SPI's claims for contribution and indemnification is denied.

**s/ William H. Walls**
United States Senior District Judge
